IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2013 MAY 21 AM 8: 55

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| TERRY CHRISTOPHER BOUNDS, | § | CAUSE NO. A-12-CV-951 LY |
| DEBTOR. | § | |

| | | |
|---|---|---|
| TERRY CHRISTOPHER BOUNDS AND | § | |
| DIANA BOUNDS, | § | |
| APPELLANTS, | § | |
| | § | |
| V. | § | |
| | § | |
| BROWN MCCARROLL, LLP, LYNN | § | |
| HAMILTON BUTLER, AND RANDOLPH | § | |
| N. OSHEROW, TRUSTEE, | § | |
| APPELLEES. | § | |

## MEMORANDUM OPINION AND ORDER

This case is an appeal of a final declaratory judgment entered on July 6, 2012, in an adversary

proceeding before the United States Bankruptcy Court for the Western District of Texas, Austin

Division. Before this court are the Brief for Appellants Terry Christopher Bounds and Diana Bounds

filed October 31, 2012 (Clerk's Doc. No. 3), the Joint Brief for Appellees Lynn Hamilton Butler,

Brown McCarroll, L.L.P., and Randolph Osherow, Trustee, filed November 16, 2012 (Clerk's Doc.

No. 6), and the Reply Brief for Appellants Terry Christopher Bounds and Diana Bounds filed

December 3, 2012 (Clerk's Doc. No. 7). On January 4, 2013, the court entertained oral argument,

at which all parties appeared and were represented by counsel. Having carefully considered the

briefs, argument of counsel, and applicable law, the court concludes that the bankruptcy court's order

should be affirmed in part and vacated in part for the reasons to follow.

## I.  Procedural Background

Chapter 7 debtor Terry Christopher (Chris) Bounds and his wife Diana Bounds filed this appeal challenging the bankruptcy court's declaratory judgment following a trial in two consolidated state-court actions that were removed to the bankruptcy court as adversary proceedings, asserting malpractice against the law firm of Brown McCarroll, L.L.P. and one of its partners, Lynn Hamilton Butler.[1]  Brown McCarroll represented Chris Bounds in connection with various bankruptcy matters for approximately six months, from September 21, 2009, through March 23, 2010.  Chris and Diana Bounds and the Chapter 7 trustee, Randolph Osherow, each filed claims for negligence and breach of fiduciary duty against Brown McCarroll in state court based on the legal advice and services they provided.

Following removal of the state-court actions to the bankruptcy court, Brown McCarroll filed counterclaims for a declaratory judgment that the legal-malpractice claims belong to the bankruptcy estate, not Chris and Diana Bounds individually.  The Boundses filed cross-claims seeking a declaration to the contrary.  The bankruptcy court held a trial on the discrete issue of ownership of the claims on May 29, 2012.  On June 29, 2012, the bankruptcy court issued an oral ruling that the claims are property of the bankruptcy estate and, therefore, only the trustee has standing to prosecute them.  The bankruptcy court's declaratory judgment, entered on July 6, 2012, memorialized its oral rulings.  Chris and Diana Bounds timely appealed.

## II.  Standard of Review

The issue in this case is whether the causes of action against Brown McCarroll are property of the Boundses as individuals or belong to the bankruptcy estate.  This is "purely a question of law"

---

[1]Because the interests of Brown McCarroll and Butler are coextensive, the court will hereinafter refer to Brown McCarroll and Butler collectively as "Brown McCarroll."

that the court reviews *de novo*. *In re Swift*, 129 F.3d 792, 295 (5th Cir. 1997); *see also In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 583 (5th Cir. 2008) (internal citations omitted).

### III. Analysis

Upon the filing of bankruptcy, the Bankruptcy Code creates an estate that consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "The phrase 'all legal or equitable interests of the debtor in property' has been construed broadly, and includes 'rights of action' such as claims based on state or federal law." *Seven Seas Petroleum*, 522 F.3d at 584 (citations omitted). Whether a debtor had a property interest in a given cause of action at the time of the bankruptcy filing depends on whether the cause of action had accrued. *Swift*, 129 F.3d at 795. Therefore, to determine the ownership of the legal-malpractice claims at issue, the court must determine whether these claims had accrued "as of the commencement" of Chris Bounds's bankruptcy case. *See* 11 U.S.C. § 541(a)(1). That determination is governed by state law. *See Swift*, 129 F.3d at 795 (citing *Butner v. United States*, 440 U.S. 48, 55 (1979)). The parties agree that Texas law governs the state-law issues in this case.

### A. Accrual of a Cause of Action under Texas Law

"The accrual of a cause of action means the right to institute and maintain a suit, and whenever one person may sue another a cause of action has accrued." *Luling Oil & Gas Co. v. Humble Oil & Refining Co.*, 191 S.W.2d 716, 721 (Tex. 1946). To possess a right to sue, some legal injury is required. *Atkins v. Crosland*, 417 S.W.2d 150, 153 (Tex. 1967). Whereas discovery of that injury is relevant to the determination of when the statute of limitations begins to run, it is not relevant to the determination of when a cause of action accrues. *Swift*, 129 F.3d at 798. As a general rule, "a cause of action accrues when a wrongful act causes some legal injury, even if the fact of

3

injury is not discovered until later, and even if all resulting damages have not yet occurred." *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996) (citations omitted). "[T]he focus, then, is upon the moment the injury occurred." *Swift*, 129 F.3d at 798.

Where the act setting the injury in motion is in itself a completed wrong, such as an invasion of some personal or property right of the plaintiff, the act and legal injury occur simultaneously. *Atkins*, 417 S.W.2d at 153 (citation omitted). In that case, the cause of action accrues "from the time the act is committed, even where little, if any, actual damage occurs immediately on commission of the tort." *Id.* (citation omitted). On the other hand, "[i]f the act is of itself not unlawful in this sense," the cause of action accrues "when, and only when, the damages are sustained." *Id.* (citation omitted). This is true even if "at the time the act is done it is apparent that injury will inevitably result." *Id.* (citation omitted).

Applying these principles, the Texas Supreme Court held in *Atkins* that a malpractice action against an accountant for negligent preparation of tax returns did not accrue until a tax deficiency was assessed by the Internal Revenue Service, because the act complained of—the accountant's use of the cash method, as opposed to the accrual method, of accounting—was not in itself the type of act which upon its commission caused legal injury. *Id.* In the absence of some additional act, injury would not result. *Id.* It was the subsequent assessment of a tax-deficiency notice that provided the plaintiff with the right to sue. *Id.*

*Atkins* establishes that harm to the plaintiff's legally protected interest need not be finally established for a cause of action to accrue. *Id.*; *see also Zidell v. Bird*, 692 S.W.2d 550, 557 (Tex. App.—Austin 1985, no writ) (noting that tax-deficiency assessment in *Atkins* might not have been sustained on administrative and judicial review and thus did not dictate inevitable injury to plaintiff).

4

Rather, the acts giving rise to the harm need raise "only a specific and concrete risk of injury" to the plaintiff's legally protected interest. *Id.*; *see also Swift*, 129 F.3d at 795–96 ("All that is needed is a specific and concrete risk of harm to the party's interest.").

### B. Causes of Action Pleaded by Chris and Diana Bounds

The claims at issue in this case are state-law claims of legal malpractice. Chris and Diana Bounds each filed a plea in intervention in a pending state-court lawsuit. *See Bounds & Pinto Marketing v. Herman*, Cause No. D-1-GN-10-004274 (126th Dist. Ct., Travis County, Tex.). The pleas asserted claims of negligence and breach of fiduciary duty against their prior attorneys, Brown McCarroll.

Chris Bounds had retained Brown McCarroll to represent him and his two corporations in seeking bankruptcy protection. At the time, Bounds and his corporations were defending a lawsuit filed by Bounds's former business partner in state court. *See Fernea v. Bounds*, Cause No. D-1-GN-07-003874 (250th Dist. Ct., Travis County, Tex.). Brown McCarroll advised Bounds to file bankruptcy on behalf of himself and his corporations on the morning of trial of the *Fernea* case. Brown McCarroll also advised Bounds to quickly sell corporate assets and bring cash to the firm as a retainer for filing the bankruptcies. Bounds followed Brown McCarroll's advice. His actions were later repeated to the jury in the *Fernea* litigation, which allegedly harmed Bounds's credibility and defense.

Although the bankruptcy filing temporarily abated the *Fernea* case, the bankruptcy court ultimately lifted the automatic stay, and the litigation resulted in a judgment adverse to Chris Bounds. As a result of the state-court litigation and the bankruptcy, Bounds contends he lost his securities license, his homestead and other exemptions, and his interest in his corporate assets.

Finally, Bounds claims Brown McCarroll disregarded his instructions to have his bankruptcy case dismissed and instead withdrew from representation, leaving him without counsel.

Some of the legal advice involved Diana Bounds. Before Chris Bounds filed for bankruptcy, Brown McCarroll recommended that he terminate the employment of all his corporate employees and have a new company owned by Diana Bounds hire the employees on the next business day. Brown McCarroll directed Diana Bounds to use her last, personal savings from her separate accounts to start the business, which the bankruptcy trustee ultimately closed. As a result, Diana Bounds was forced to fire all her employees and break all of her contracts with clients and for office space, leading to financial losses and damage to her credit score and business reputation.

Chris and Diana Bounds both claim Brown McCarroll never advised them about the implications of filing for bankruptcy, the possibility that the securities claims at issue in the *Fernea* litigation could be nondischargeable, or the claims in that litigation could render their homestead nonexempt. Instead, both Chris and Diana Bounds were told their homestead would be protected.

Chris Bounds asserts Brown McCarroll is liable for negligence because they breached their duty "not to place him in bankruptcy without a clear direction concerning the consequences of doing so." Diana Bounds's negligence claim is based on the breach of a duty to "correctly answer her questions about the effect of her husband's bankruptcy on her" and "not to advise her to conduct business transactions relating to the bankruptcy scheme that would ultimately cause her to lose significant personal funds, her business, and her reputation in the business community." Chris and Diana Bounds both allege Brown McCarroll is liable for breach of fiduciary duty for, among other things, its failure to represent them with loyalty and honesty and to inform them of matters material to the representation.

6

## C. *Ownership of the Claims*

(i)   Malpractice Claims of Chris Bounds

The bankruptcy court held that Chris Bounds's legal-malpractice claims accrued at the moment he took his attorneys' advice and filed for bankruptcy. The court defined the legal injury Bounds suffered at that time as the "immediate loss of ownership and control of his assets, as well as the spare risk of losing his homestead." Although the court recognized that not all of the harm alleged by Bounds occurred before or at the time of the filing for bankruptcy, the loss of control of his assets was a sufficient injury to give rise to the right to sue for malpractice. In reaching this conclusion, the bankruptcy court relied heavily on a case from the Eleventh Circuit Court of Appeals, *In re Alvarez*, 224 F.3d 1273 (11th Cir. 2000). Bounds argues this was error. This court disagrees.

*Alvarez* concerned a legal-malpractice claim by a debtor against his bankruptcy counsel based on the attorney's negligence in filing the debtor's case under Chapter 7 rather than Chapter 11. 224 F.3d at 1275. At issue was the question of ownership of the cause of action, as here. *Id.* at 1276. The court rejected the debtor's argument that redressable harm did not occur until after the filing of the bankruptcy petition and held the debtor suffered injury at the "precise moment his Chapter 7 petition was filed." *Id.* at 1277. The injury was the debtor's "loss of ownership and control of his assets," which existed "*as of* the commencement of the [bankruptcy] case." *Id.* at 1278 (citing 11 U.S.C. § 541(a)(1) (emphasis added)). Thus, the claim belonged to the bankruptcy estate. *Id.*

The conclusion reached in *Alvarez* comports with both the language of the Bankruptcy Code and Texas and Fifth Circuit precedent on the accrual of causes of action. *See* 11 U.S.C. § 541(a)(1). The Bankruptcy Code refers to legal and equitable interests of the debtor "as of" the commencement of the case, as opposed to interests of the debtor "before" or "prior to" filing. *See Alvarez*, 224 F.3d

7

at 1278. This distinction is significant where, as in *Alvarez*, the debtor suffers harm "contemporaneous with filing his bankruptcy petition." *See In re Witko*, 374 F.3d 1040, 1044 (11th Cir. 2004).

Although the Fifth Circuit has not directly addressed such a case, it has written extensively on ownership of malpractice claims in the bankruptcy context. In *Swift*, the court held that a debtor's claims of negligence and breach of fiduciary duty against the administrator of his retirement plan accrued at the time he converted the plan to an individual retirement account, because the conversion caused the debtor to incur additional tax liability. 129 F.3d at 799. As the debtor suffered this harm before filing the bankruptcy petition, the claim belonged to the bankruptcy estate. *Id.* Significantly, the court reached this conclusion despite the fact that the specific harm asserted by the debtor was the loss of a bankruptcy exemption, which unquestionably occurred postpetition, as opposed to the prepetition exposure to additional tax liability identified by the court. *See id.* This is because "[a] cause of action accrues when *any* damage is suffered, even if the injured party is not seeking recovery for those particular damages." *Id.* at 799 n.37 (emphasis added)).

This court, therefore, rejects Bounds's argument that the bankruptcy court should have parsed his various injuries into separate claims of legal malpractice, some of which accrued prepetition and some of which accrued postpetition. Chris Bounds alleges one theory of negligence: his attorneys' breach of their duty "not to place him in bankruptcy without a clear direction concerning the consequences of doing so." Whereas this conduct resulted in a number of different injuries, some of which occurred later in his bankruptcy case, Bounds's cause of action accrues under Texas law at the time he suffered *some* harm. *See S.V.*, 933 S.W.2d at 4 ("[A] cause of action accrues when a wrongful act causes some legal injury, . . . even if all resulting damages have not yet occurred.").

8

Additionally, the court notes that it is the "facial allegations in the complaint" that limit and guide the accrual analysis. *See Seven Seas Petroleum*, 522 F.3d at 583. Here, Chris Bounds alleges that Brown McCarroll devised an ill-conceived and self-serving plan to stall the pending state-court litigation by filing for bankruptcy on the eve of trial without explaining to Bounds that any judgment from the litigation "would not be dischargeable in bankruptcy and, moreover, that the securities violations alleged would render his homestead nonexempt." *See* 11 U.S.C. 522(q) (prohibiting debtor owing debt arising from violation of securities laws from exempting amount and interest in property exceeding $125,000). Bounds claimed "[t]his strategy created tremendous and unnecessary exposure to Bounds and his assets." In essence, Bounds alleges had his attorneys advised him of these risks, he would not have filed bankruptcy in the first instance.

To that extent, Bounds's allegations of malpractice differ from the claims at issue in *Swift v. Seidler*, which the bankruptcy court held were property of the debtor because they had accrued postpetition. 198 B.R. 927 (Bankr. W.D. Tex. 1996), *aff'd* 114 F.3d 1183 (5th Cir. 1997) (unpublished per curiam opinion). In *Seidler*, the debtor alleged his attorney's negligence caused the denial of his discharge and his claimed exemption of an individual retirement account. *Id.* at 929. In light of these allegations, the bankruptcy court ruled that the debtor did not suffer a concrete and specific risk of harm until an objection to the debtor's claimed exemption was filed. *Id.* at 931. *See also Swift*, 129 F.3d at 800 (distinguishing postpetition harm in *Seidler* from prepetition harm in *Swift*). Here, although Bounds pleads some postpetition injuries, the crux of his allegations relate to the harm suffered from filing bankruptcy without sufficient knowledge of the risks involved. His attorneys devised the scheme to delay trial and file for bankruptcy primarily through meetings prior to the bankruptcy filing. Bounds acted on the recommendations before and contemporaneous with

the filing of his bankruptcy petition and suffered harm as a result.

Accordingly, the court finds that Bounds had suffered injury sufficient to give right to a rise to sue, even if he had not yet discovered that injury, at the time he followed his attorney's advice and filed for bankruptcy. Bounds concedes at the time he filed for bankruptcy he had already suffered one injury due to his attorneys' negligent legal advice: the loss of ownership of his corporate assets due to his sale of corporate notes to pay the retainer for his attorneys' filing of his personal and corporate bankruptcies. The court identifies the additional injuries of losing control of all other assets and exposing himself to "the specific and concrete risk" of losing his homestead, which occurred at the time of the bankruptcy filing. *See Swift*, 129 F.3d at 795–96; *see also Alvarez*, 224 F.3d at 1278. In summary, Chris Bounds legal-malpractice claims accrued "as of the commencement" of the bankruptcy case, even if he did not at that time know the full extent of his injuries. As a result, the bankruptcy court did not err in finding these claims belong to the bankruptcy estate.

(ii)    Malpractice Claims of Diana Bounds

The bankruptcy court held that the legal-malpractice claims of Diana Bounds also belong to Chris Bounds's bankruptcy estate. In doing so, the court rejected Diana Bounds's contention that her legal-malpractice claims cannot belong to her husband's bankruptcy estate, because they are her sole-management community property. In its oral ruling following trial, the bankruptcy court concluded Diana Bounds did not carry her burden of proof to demonstrate by "clear-and-convincing evidence" that her legal claims are her "separate property." On appeal, Bounds argues the bankruptcy court improperly allocated the burden of proof and erred in failing to consider whether her legal-malpractice claims were her sole-management community property, as opposed to her

10

separate property.

Under the Bankruptcy Code, a bankruptcy estate consists of, among other property, all interest of the debtor "and the debtor's spouse in community property as of the commencement of the case that is . . . under the sole, equal, or joint management or control of the debtor." 11 U.S.C. § 541(a)(2). "Courts look to state law to characterize the 'property rights in the assets of a bankrupt's estate.'" *Douglas v. Delp*, 987 S.W.2d 879, 883 (Tex. 1999) (citing *Butner*, 440 U.S. at 54–55). The characterization of property, if disputed, is a question of fact. *Scott v. Estate of Scott*, 973 S.W.2d 694, 695 (Tex. App.—El Paso 1998, no writ); *Winfield v. Renfro*, 821 S.W.2d 640, 652 (Tex. App.—Houston [1st Dist.] 1991, writ denied).

As a general rule, community property under Texas law consists of all property either spouse acquired during the marriage "other than separate property." *Douglas*, 987 S.W.2d at 883 (citing TEX. FAM. CODE § 3.002). There is a presumption that property possessed by either spouse during marriage is community property. TEX. FAM. CODE § 3.003(a). The degree of proof necessary to prove that property is separate property is "clear and convincing evidence." *Id.* § 3.003(b).

Texas recognizes both sole-management community property and joint-management community property. *Douglas*, 987 S.W.2d at 883; *see also* TEX. FAM. CODE § 3.102. Community property is subject to the "joint management, control and disposition of the spouses unless the spouses provide otherwise by power of attorney in writing or other agreement." *Jean v. Tyson-Jean*, 118 S.W.3d 1, 5 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (citing TEX. FAM. CODE § 3.102(c)). "However, where community property is held in one spouse's name only, there is a presumption that the property is sole-management community property." *Id.* (citing TEX. FAM. CODE § 3.104(a)). This may be shown by "muniment, contract, deposit of funds, or other evidence of

11

ownership." TEX. FAM. CODE § 3.104(a). It is only a debtor's separate property, sole-management community property, and joint-management community property that become part of the bankruptcy estate; the sole-management community property of a debtor's spouse does not. *See* 11 U.S.C. § 541(a)(2). However, if sole-management community property is mixed or combined with a spouse's sole-management community property, then the mixed or combined community property becomes joint-management community property, unless the spouses provide otherwise by power of attorney in writing or other agreement. TEX. FAM. CODE § 3.102(b).

Whether a legal cause of action, such as the legal-malpractice claims here, is classified as separate property, joint-management community property, or sole-management community property depends on the nature of the injury asserted. *Id.*; *see also Graham v. Franco*, 488 S.W.2d 390, 396–97 (Tex. 1972) (classifying damages as community or separate property based on whether injury was to the individual spouse, such as pain and suffering, or ultimately to the marital community, such as loss of earning capacity). "When different kinds of damages are claimed in a single cause of action, we look to the nature of each injury when classifying those damages as community or separate property." *Douglas*, 987 S.W.2d at 883.

Diana Bounds alleges Brown McCarroll failed to advise her of the potential consequences of her husband filing for bankruptcy, as well as the risks associated with the plan to utilize her new company, REC Industries, to take over the clients and employees of her husband's corporations. She seeks damages arising from the shutting down of her business by the bankruptcy trustee, specifically: (1) the loss of her personal savings used to fund the company, (2) the cost of terminating her contracts with clients and office space; (3) damage to her credit; and (4) damage to her business reputation. She also seeks damages for the loss of her homestead exemption. Bounds characterizes

her damages sought as actual damages, mental anguish, exemplary damages, and the equitable remedy of disgorgement of legal fees.

In evaluating the ownership of Diana Bounds's claims, the bankruptcy court did not undertake the aforementioned analysis. Although the court acknowledged Bounds's assertion that her legal-malpractice claims are her sole-management community property, the court's analysis only recited the distinction between community and separate property. Furthermore, the court ignored the presumption that property held in the name of Diana Bounds alone, even if acquired during marriage, is sole-management community property and erroneously held her to the higher burden of proof applicable to claims of separate property. Finally, the court also erred in failing to evaluate the different injuries asserted in Diana Bounds's state-court plea in intervention to determine if she retained ownership over at least some of her malpractice claims. *See Douglas*, 987 S.W.2d at 883.

Because the bankruptcy court applied the incorrect legal standard as to the claims of Diana Bounds, the court will vacate the bankruptcy court's declaratory judgment as to those claims and remand for further proceedings. On remand, the court must first determine whether each of the injuries asserted in Diana Bounds's plea in intervention are separate property, sole-management community property, or joint-management community property. Those injuries that are her separate or sole-management community property belong to Diana Bounds, not the bankruptcy estate of her husband. *See* 11 U.S.C. § 541(a)(2). As to any injury that is joint-management community property, the bankruptcy court must determine whether such injuries accrued "as of the commencement" of Chris Bounds's bankruptcy case. *See id.*

### IV.  Conclusion

In summary, the bankruptcy court did not err in concluding that the legal-malpractice claims

13

asserted by Chris Bounds accrued "as of the commencement" of his bankruptcy case. The court will therefore affirm the bankruptcy court's declaratory judgment that these claims belong to the bankruptcy estate. However, the court will vacate the bankruptcy court's judgment as to the claims of Diana Bounds and remand for further proceedings.

**IT IS THEREFORE ORDERED** that the July 5, 2012 Declaratory Judgment of the United States Bankruptcy Court for the Western District of Texas is **AFFIRMED IN PART** and **VACATED IN PART** as set forth herein.

**IT IS FURTHER ORDERED** that this cause is **REMANDED** to the bankruptcy court for further proceedings consistent with this opinion.

SIGNED this ____ day of May, 2013.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE